UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TIFFANY L. GEPHART, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| ANDREW SAUL, ) | Cause 1:19-CV-104-RLM |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

Tiffany Gephart seeks judicial review of the final decision of the Commissioner of Social Security's decision denying her applications for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 423 *et seq*. The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g). The court heard argument on June 1. For the reasons that follow, the court affirms the Commissioner's decision.

Ms. Gephart was 19 years old on December 21, 1997, the alleged onset of disability. She applied for benefits based on a variety of physical and mental impairments, including infantile cerebral palsy, generalized anxiety, depression, morbid obesity, and hypothyroidism. Her application was denied initially, upon reconsideration, and after an administrative hearing in November of 2017. The ALJ concluded at the hearing that, through the date last insured, Ms. Gephart didn't have an impairment or combination of impairments that significantly limited her ability to perform basic work activities for 122 consecutive months, and that, therefore, she didn't have a severe impairment. Since the ALJ found

that Ms. Gephart didn't have a severe impairment, he found that she wasn't disabled. More specifically, the ALJ found that:

- Ms. Gephart last met the insured status requirement on March 31, 2007.
- As of the date last insured, Ms. Gephart has the following medically determinable impairments: cerebral palsy and left knee strain.
- Through the date last insured, Ms. Gephart didn't have an impairment or combination of impairments that significantly limited her ability to perform basic work related activities for 12 months, and therefore did not have a severe impairment or combination of impairments. 20 C.F.R. Pt. 404.1521 *et seq.*
- Ms. Gephart's alleged generalized anxiety, depression, morbid obesity, hyperglycemia, and hypothyroidism were nonmedically determinable impairments through the date last insured.

[AR 15-19].

The ALJ therefore concluded that Ms. Gephart wasn't disabled within the meaning of the Social Security Act, and wasn't entitled to benefits. When the Appeals Council denied her request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

Ms. Gephart contends that the ALJ erred when he:

(1) failed to apply SSR 83-20 to determine the onset of her disability;

(2) evaluated her symptoms and limitations; and

(3) evaluated the opinion evidence.

The issue before the court isn't whether Ms. Gephart is disabled, but whether substantial evidence supports the ALJ's decision that she isn't. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson

2

v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000), but it "will conduct a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ isn't required "to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160.

1. *Use of SSR 83-20 to determine onset date*

Social Security Ruling 83-20, which controlled at the time the ALJ heard Ms. Gephart's case, provides a framework by which an ALJ should determine the onset date of a disability. Ms. Gephart argues that the ALJ erred by failing to employ the analytical framework outlined in SSR 83-20 to determine the onset date of her disability. SSR 83-20 only applies when the claimant is found to be disabled, Schloesser v. Berryhill, 870 F.3d 712, 718 (7th Cir. 2017). and the ALJ never found Ms. Gephart to be disabled. The ALJ didn't err by not using the SSR 83-20 framework.

3

2. *Evaluation of Ms. Gephart's symptoms and limitations*

(A) *The ALJ didn't make a general credibility determination rather than evaluating symptoms.*

Ms. Gephart asserts that the ALJ's use of boilerplate language show a lack of diligence and an inversion of the analytic process by deciding that she wasn't disabled then finding reasons to support that decision. Ms. Gephart cites to Stark v. Colvin for the proposition that the ALJ's use of the boilerplate language indicated backwards reasoning. While the Stark opinion criticizes the ALJ's use of boilerplate language, the backwards reasoning that it found to be error was that the ALJ had first determined the claimant's residual functional capacity, then determined the credibility of her testimony based on the residual functional capacity. Stark v. Colvin, 813 F.3d 684, 688 (7th Circ. 2016). Ms. Gephart's ALJ used the boilerplate language, then continued on to describe why he didn't credit the testimony without reference to the residual functional capacity. The ALJ didn't substitute the boilerplate for "a proper, full-bodied explanation of why credibility is lacking." Hammerslough v. Berryhill, 758 F. App'x 534, 539 (7th Cir. 2019).

(B) *The ALJ didn't err by refraining from inferring that Ms. Gephart's current level of function is an accurate representation of her historic ability to function.*

Ms. Gephart argues that because the ALJ found that she has cerebral palsy, the ALJ should have inferred that her current limitations accurately reflect her limitations before her "last insured" date. Ms. Gephart cites to the Centers for Disease Control and Prevention and to SSA regulations that describe cerebral

4

palsy as a stable disease. The cited CDC webpage states that while cerebral palsy is stable, "the exact symptoms can change over a person's lifetime." Centers for Disease Control, What is Cerebral Palsy? (accessed on March 13, 2020 at https://www.cdc.gov/ncbddd/cp/facts.html). The cited SSA regulation includes in its definition of cerebral palsy that the "[d]eficits may become more obvious as the person grows and matures over time." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.00(L)(1). Ms. Gephart argues that the ALJ shouldn't have required evidence of her condition prior to the date last ensured because "[i]t would have been more reasonable to infer that Ms. Gephart's current level of function was a fairly accurate representation of her historical ability to function." The court can't review for what would have been more reasonable, but rather must consider whether substantial evidence supported the ALJ's decision. Ms. Gephart had the burden of demonstrating that she was disabled as of the date last insured. Jaquez v. Barnhart, No. 04 C 3103, 2005 U.S. Dist. LEXIS 21719, at *16 (N.D. Ill. Sep. 1, 2005). The ALJ didn't err in finding that she failed to meet that burden.

  (C) *The ALJ didn't err in not seeking additional medical records.*

Ms. Gephart argues that the ALJ impermissibly served as a medical expert when he said he needed documentation of the severity of her impairment up to the date last insured and that, if the ALJ needed more medical records, he erred by failing to get them. A claimant must demonstrate disability on or before the date last insured to be eligible for disability insurance benefits. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1). The burden is on the claimant to demonstrate that an

5

impairment is severe. Castile v. Astrue, 617 F.3d 923, 926 (7th Cir. 2010). At the hearing, the ALJ asked Ms. Gephart's representative about the lack of records, and the representative told him that everything older than seven years was destroyed. A claimant who is "represented by counsel" is presumed have made her best case before the ALJ. Summers v. Berryhill, 864 F.3d 523, 527 (7th Cir. 2017). Ms. Gephart was represented by a doctor rather than an attorney. But that doctor makes a practice of representing disability claimants as a non-attorney representative. Ms. Gephart doesn't argue that a different standard applies because her representative wasn't an attorney. Since Ms. Gephart's representative indicated to the ALJ that no additional records existed, the ALJ didn't err by not seeking out more records.

Ms. Gephart also argues that the ALJ had failed to obtain medical records from Ms. Gephart's childhood or adolescence without discussing whether those records were available. Ms. Gephart's representative told the ALJ that the record was complete and that there weren't additional medical records for the ALJ to consider. The ALJ wasn't required to ignore the representative's statement about the absence of records and search for additional records from Ms. Gephart's childhood and adolescence.

(D) *The ALJ didn't err in his treatment of the secondary manifestations of cerebral palsy.*

Ms. Gephart argues that the ALJ inadequately considered the secondary manifestations of cerebral palsy when he dismissed her struggle with anxiety and didn't ask about her weight or pain before her date last insured. The ALJ gave Ms. Gephart's representative the opportunity to question her, and the

6

representative did. He asked Ms. Gephart many questions about her knee pain and fear of falling but didn't ask about her weight or pain unrelated to her knee. A claimant who is "represented by counsel" is presumed have made her best case before the ALJ. Ms. Gephart has identified no medical evidence from the relevant period that ALJ failed to unearth. Summers v. Berryhill, 864 F.3d at 527 (7th Cir. 2017) (claimant's "[m]ere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand.")(internal citation omitted).

(E) *The ALJ's opinion had an inaccuracy, but the inaccuracy was harmless error.*

Ms. Gephart argues that the ALJ mischaracterized the evidence. She points to several alleged mischaracterizations: the ALJ mistakenly said that she worked full time as a dietary aid in 1999, improperly analyzed her work history despite finding that she hadn't engaged in substantial gainful activity, discredited her for earning a degree, and overemphasized her lack of falls.

The ALJ was incorrect when he said that Ms. Gephart worked as a dietary aid in 1999. The ALJ was mistaken about the title of Ms. Gephart's job, but his description of the components of the job -- lifting 50 pounds with assistance -- accurately reflected Ms. Gephart's testimony about the job she had at the time and he didn't say that she performed the job full-time. This mistake was harmless error. The ALJ didn't err in considering the activities she had done in her work during the alleged period of disability: that he found that she hadn't engaged in substantial gainful activity doesn't preclude consideration of the work that she has done. The ALJ also doesn't appear to have discredited Ms. Gephart

7

for earning a degree during the relevant period, but rather noted that she completed the Associates degree without assistance or special accommodations.

Finally, Ms. Gephart asserts that the ALJ equated her lack of falls with having no limitations. Ms. Gephart calls this reasoning "illogical and sadistic[.]" The ALJ never determined that Ms. Gephart's cerebral palsy caused no limitations; he held that the cerebral palsy didn't significantly limit her ability to work. Since Ms. Gephart raised the issue of her balance, the ALJ could consider her lack of falls in appraising the severity of her condition.

*(F) The ALJ didn't improperly use her delay in filing for disability to determine that she wasn't disabled.*

Ms. Gephart claims that while the ALJ didn't explicitly say that he used her delay in filing to determine that she wasn't disabled, he didn't offer any reason for repeatedly mentioning her delay in filing. The ALJ mentioned the delay in filing twice: once when providing background information, and again when he discussed when Ms. Gephart complained of her various impairments. These are both logical times to relay when the claimant filed for disability, and the ALJ wasn't required to provide additional explanation of why he provided that information.

*(G) The ALJ didn't give too much weight to Ms. Gephart's activities of daily living.*

Ms. Gephart argues that the ALJ erroneously used her activities of daily living as evidence of her capacity to work, citing Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001) and Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000), as amended (Dec. 13, 2000). Using such evidence wasn't patently wrong; daily

8

activity is one of the factors listed in SSR 96-7p. The ALJ didn't cite Ms. Gephart's daily activities as proof she could work; rather, he explained that they were inconsistent with her complaints of severe knee pain and the effects of her cerebral palsy.

> (H) *The ALJ didn't err in not considering how Ms. Gephart's anxiety might have impacted her decision-making.*

Ms. Gephart claims that the ALJ was required to consider how her anxiety might have impacted her decisions related to seeking treatment and applying for disability. The cases Ms. Gephart cites for the proposition that the ALJ had to consider Ms. Gephart's anxiety address the requirement that an ALJ consider reasons why a claimant might not have sought treatment before discounting the claimant's testimony about the severity of her symptoms because the claimant didn't seek treatment or didn't follow medical recommendations. *See* Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996); Hughes v. Comm'r of Soc. Sec., CAUSE NO. 1:16-cv-00023-SLC, at *15 (N.D. Ind. Mar. 29, 2018). Since the ALJ wasn't considering Ms. Gephart's lack of treatment, failure to address her anxiety in that context wasn't error.

### 3. *Evaluation of the opinion evidence.*

The ALJ determined that Dr. Tamera Robbin's medical opinion was entitled to little weight. A treating physician's opinion is given controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and isn't inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2). If the ALJ doesn't give

the treating physician's opinion controlling weight, he must consider the following factors in deciding what weight to give any medical opinion: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors which tend to support or contradict the opinion. Campbell v. Astrue, 627 F.3d 299, 308 (7th Cir. 2010); 20 C.F.R. § 416.927(c). An ALJ needn't explicitly weigh each factor so long as the decision makes clear that he was aware of and considered many of the factors. Schreiber v. Colvin, 519 F. App'x 951, 959 (7th Cir. 2013). An ALJ is entitled to evaluate the evidence and explanations that support a medical source's findings. See 20 C.F.R. § 404.1527(d)(3).

The ALJ provided three reasons for his determination that Dr. Robbins's opinion was entitled to little weight. First, the ALJ noted that the opinion directed the him to a report for a description of limitations but didn't attach a report. It appears that the report was before the ALJ because it is part of the record, so it was incorrect to discount Dr. Robbins's opinion because of the report.

However, the ALJ provided a sound second basis: neither the medical opinion nor the vocational therapy report to which it referred provided the time period to which any limitations applied. The medical opinion and functional evaluation both use the present tense, which implies that they are appraising Ms. Gephart's current limitations rather than her limitations in the relevant period. Ms. Gephart argues that because cerebral palsy is a nonprogressive disease, the ALJ should have inferred that her condition in 2017, the date of the

10

medical opinion, was substantially the same as her condition prior to March 21, 2007, her date last insured. The ALJ had no evidence before him that Ms. Gephart's condition had remained static. The ALJ wasn't allowed to exercise the medical judgment necessary to determine that her cerebral palsy created the same limitations in 2007 as in 2017. Because the ALJ found that the medical opinion didn't relate to the relevant period, he wasn't required to consider all of the 20 C.F.R. § 416.927(c) factors. The ALJ didn't err by discounting Dr. Robbins's opinion because it expressed the doctor's opinion about her condition in 2017, years after the date last insured.

For these reasons, the Commissioner's decision is AFFIRMED. Clerk to enter judgment.

SO ORDERED.

ENTERED:   June 8, 2020

　　　　　　　　　　　　　　　　　　   /s/ Robert L. Miller, Jr.   
　　　　　　　　　　　　　　　　　　Judge, United States District Court